1
2
3
4
5

**LAW OFFICE OF RESHMA KAMATH**
Reshma Kamath, Cal. Bar No. 333800,
700 El Camino Real, Suite 120, #1084,
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
Plaintiff **RESHMA KAMATH**

6
7

### IN AND FOR THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

8
9
10
11
12
13
14
15
16
17
18

| | |
|---|---|
| RESHMA KAMATH, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD C. BARMANN, JR., a judge; DEPUTY SHERIFF, a sheriff; ERIC BRADSHAW, a presiding judge; THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF KERN; an administrative body; and DOES 1-10, INCLUSIVE, <br><br> Defendants. | Case No.: 1:23-at-267 <br><br> **COMPLAINT FOR:** <br><br> **1. INJUNCTIVE RELIEF;** <br> **2. NEGLIGENCE;** <br> **3. RACIAL DISCRIMINATION - FOURTEENTH AMENDMENT - Title 42 U.S. Code §1983;** <br> **4. DECLARATORY RELIEF;** <br><br> **DEMAND FOR JURY TRIAL** |

19
20
21
22
23
24
25
26
27
28

*TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD, HEREIN:*

# FEDERAL COMPLAINT

## INTRODUCTION

PLAINTIFF RESHMA KAMATH submits this COMPLAINT, and alleges the below factual allegations:

## PARTIES

1. PLAINTIFF RESHMA KAMATH is the plaintiff, and a natural person. PLAINTIFF RESHMA KAMATH is licensed as a lawyer in the State of California, and is in good standing with the State Bar of California. Plaintiff was born in India, and is Indian-American. Plaintiff is highly educated, has academic publications, has won scholarships and honors, has multiple degrees where she was often the top of her class, and has worldly experience dealing with people and cultures that were diverse and varied, including South Africa, and South Korea – where she has lived for extended periods of time. Plaintiff is hereinafter referred to as "PLAINTIFF RESHMA."

2. Defendant BERNARD C. BARMANN, JR., is a superior court judicial officer, and a natural person, hereinafter referred to as "DEFENDANT BCB."

3. Defendant DEPUTY SHERIFF, whose name is unknown, is a deputy sheriff in the courthouse of Defendant BCB, courtroom department 17, hereinafter referred to as "DEFENDANT DEPUTY SHERIFF."

4.  Defendant ERIC BRADSHAW, is a superior court judicial officer, the presiding judicial officer since January 2023, and a natural person, hereinafter referred to as "DEFENDANT JUDGE BRADSHAW."

5.  Defendant THE SUPERIOR COURT OF CALIFORNIA, THE COUNTY OF KERN is an administrative body and courthouse.

6.  PLAINTIFF is ignorant of the true names and capacities of DEFENDANTS, sued herein as DOES 1-10, inclusive, and therefore, sues these Defendants by such fictitious names.  PLAINTIFF presently is unaware of the DOE  names or capacities of defendants named herein as DOES 1-10, inclusive, and PLAINTIFF will seek leave of Court to allege their true names and capacities after the same have been ascertained.

7.  PLAINTIFF is informed and believe, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent,  servant,  partner,  and  employee,  with  the permission  and  consent  of  defendants. The named defendants and are sometimes hereafter referred to, collectively and/or individually, as "DEFENDANTS."

8. PLAINTIFF is informed and believe and thereon allege that each of the DEFENDANTS herein and are in some manner legally responsible for the acts and omissions alleged herein and actually and legally caused and contributed to various injuries and damages alleged herein.

9. PLAINTIFF is informed and believe, and thereon allege that at all times herein mentioned, each of the DEFENDANTS were the agent, servant, partner, joint venturer, and/or employee of each of the other DEFENDANTS, and in doing the things hereinafter alleged, were acting within the course and scope of said agency and/or employment, and with the permission.

10. All DEFENDANTS were responsible for the events and damages alleged herein, including on the following bases: (a) DEFENDANTS committed the acts alleged; (b) at all relevant times, cone or more of the DEFENDANTS were the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for PLAINTIFF's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants.

///

///

///

**JURISDICTION AND VENUE**

11. This Court has original subject matter jurisdiction over the federal claims under 42 U.S.C 1983, because they arise under federal laws.

12. As a direct and proximate result of the unlawful acts of Defendants, Plaintiffs have suffered and continue to suffer damages in amounts to be proved at trial, but no less than $20.50 MILLION.

13. This Court is the proper venue pursuant to 28 U.S.C. § 1402(b) as the conduct occurred within the jurisdiction of this court, County of Kern, Bakersfield, California.

**FACTUAL ALLEGATIONS**

14. Plaintiff does not intend to "shop" for a judge.

15. Neither is this a complaint for any unfavorable and/or adverse outcome from the judicial officer BCB in the state court action.

16. This is a suit for *ultra vires* action of the named DEFENDANTS, such as judicial officers, clerks, and the County of Kern, Superior Court of California.

17. This is a valid Fourteenth Amendment lawsuit. Fluker v. Sutter (N.D.Cal. Nov. 19, 1991) No. C-91-3977-SC; Papadakis v. Zelis (1992) 8 Cal.App.4th 1146.

18. This is a lawsuit for invidious and systemic racial discrimination from the DEFENDANTS, such as judicial officers, clerks, and the County of Kern, Superior Court of California.

19. Consonant with the court's duty to protect the parties and the court system as a whole from such abusive conduct by resolute attorneys with apparently unlimited resources, the federal court must impose believe significant sanctions in order to deter judicial officers, clerks, and others from the frauds they continue to visit upon the court system and their adversaries. (Code Civ. Proc., § 128.5; In re Marriage of Quinlan (1989) 209 Cal.App.3d 1417, 1422-1423 [ 257 Cal.Rptr. 850]; In re Marriage of Flaherty (1982) 31 Cal.3d 637, 650 [ 183 Cal.Rptr. 508, 646 P.2d 179]; Finnie v. Town of Tiburon (1988) 199 Cal.App.3d 1, 17 [ 244 Cal.Rptr. 581].)

20. Plaintiff does not think her claims must be deterred by sanctions.

21. Plaintiff brings this action to ensure such repetitive abusive conduct does not occur repeatedly; that the judicial officers and courts have checks-and-balances with accountability towards the conduct of judicial officers; and that Plaintiff not have to bear a judicial officer, such as DEFENDANT BCB, laden with bias and prejudice towards her as counsel and individual.

22. This is a case where Plaintiff's civil and constitutional rights were denied as the judge DEFENDANT BCB in the case did deny multiple requests to have plaintiffs' counsel appear to prosecute their matters; did illegally and without jurisdiction sanction Plaintiff; and cause other officers such as sheriff to act without case; did knowingly ignore and violate the California state and

federal statutes; and not only violated due process of law, but denied equal protection under the law.

23. Further, this is a case where Plaintiff's safety and security were at issue in the courtroom, and in the premises; where the judicial officer BCB, and presiding DEFENDANT presiding judge BRADSHAW, had knowledge of, and should have had knowledge of; yet acted with indifference, and without causing to deter such actions occurring in their presence and immediate view by those white lawyers and white sheriff of the court.

24. This is a Bivens action from Plaintiff against Defendants – specifically, Defendant DEPUTY SHERIFF. This falls within the Fourth Amendment of the United States Constitution.

25. Judicial officer BCB, the deputy sheriff, the clerk, and/or administrative officer, each is using pre-text as a method of employing laws, codes and statutes to engage in invidious and systemic racial and gender discrimination.

26. Defendant BCB is a state actor. Defendant Kern County Superior Court is a state actor. Defendant Deputy Sheriff is a state actor. Defendant presiding judge Eric Bradshaw is a state actor. The state actor is defined under 42 U.S.C. action of code 1983, and falls within the Fourteenth Amendment of the United States Constitution.

27. The invidious and systemic discrimination by the Defendant-state actors, and agents, employees, and related state actors falls under the 1983 Action.

28. Plaintiff RESHMA alleges racial discrimination, gender discrimination, unwarranted search and seizure, assault, *inter alia*.

29. Plaintiff RESHMA claims she was not allowed to properly represent her clients as counsel in the state court action(s.)

30. Plaintiff RESHMA purports that her safety and security were compromised in the Superior Court of California, County of Kern, in and around Department 17 where Defendant BCB, as well as Defendant Deputy Sheriff were present.

31. Plaintiff RESHMA has personal knowledge of each and every above-stated action.

32. Plaintiff RESHMA purports that her safety and security were compromised, because Defendant Deputy Sheriff creeping up from behind her with a stack of papers is akin to assault without any verbal warning, where she saw the action of Deputy Sheriff flinging the papers.

33. Plaintiff RESHMA purports that this is a fourth amendment search and seizure that was unwarranted from Defendant Deputy Sheriff.

34. Plaintiff RESHMA purports that her safety and security were compromised, because Defendant Deputy Sheriff made a strange body posture when Plaintiff knocked on the outer door of the courtroom department 17 to request a rough transcript copy of the trial day from the court reporter.

35. Plaintiff RESHMA purports that Defendant Eric Bradshaw was given notice of such actions on-going in the courthouse, and specifically, in department 17

of the courthouse; Yet, as the presiding judge, Defendant Eric Bradshaw took no action. This inaction, and omission, i.e., lack of action, as the presiding judicial officer of the entire courthouse, is akin to negligence, and negligence *per se*.

36. Plaintiff RESHMA purports that the Defendant BCB not accepting service of

37. Plaintiff RESHMA purports that the ultra vires action of Defendant BCB in not personally serving her the Order of Contempt was without jurisdiction.

38. Plaintiff RESHMA purports that the ultra vires action of Defendant BCB in not personally serving her the Order of Contempt was without jurisdiction, because service on a commercial mail receiving agency (CMRA) requires affidavit of service, and a proof and declaration of mailing from the CMRA. Thus, the CMRA substitute service, in lieu of personal service, was not perfected.

39. Plaintiff RESHMA purports that the ultra vires action of Defendant BCB in not personally serving her the Order of Contempt was without jurisdiction, because PLAINTIFF RESHMA – in accordance with the law – did not personally appear, voluntarily did not challenge and contest the Order, and thus, Plaintiff RESHMA did not waive the personal service requirement.

40. Plaintiff RESHMA did not waive the personal service requirement.

41. Plaintiff RESHMA contends that notice – whether actual and/or constructive notice is not the standard for an Order of Contempt.

42. Defendant BCB further breached, and made unauthorized contact and ex-parte communication is sending USPS mail-service to Plaintiff Reshma addressed as "BERNARD C. BARMANN, JR.," and further sent multiple electronic service mail where he continued the Order of Contempt multiple times – each time without the personal service, and without the valid/unperfected CMRA service (with no affidavit of service, and with no declaration of mailing from CMRA,) and each time sanctioning Plaintiff RESHMA based on Defendant BCB's ultra vires action without jurisdiction.

43. Defendant BCB has made off-the-record comments re caste, minorities, one billion Indian people in the world, and related statements with his alleged doctor, who Defendant BCB claims is also of Indian ethnic and racial background.

44. Defendant Deputy Sheriff has made off-the-record comments about the stomach of Plaintiff Reshma.

45. Defendant BCB has made off-the-record comments re whether Plaintiff Reshma is disabled, and whether she needs therapy. Defendants made comments about Plaintiff RESHMA in discussion with each other that she was allegedly "on her period," (not true,) that she is "a kid," (not true,) and, "a young attorney," (uncalled for in the context of the alleged infractions by the Defendants), where such ad hominem remarks, *inter alia*, were unnecessary and discriminatory.

46. Defendant BCB has brought his familial relations, such as his wife, his children, his "step" daughters, his doctor, and etcetera – that had no bearing in this case, and were not about substantive merits. Defendant BCB was looking for a 'husband" to show up for Plaintiff Reshma – after Defendant BCB issued a *sua sponte* order related to bad-faith, false and reckless disregard – often conclusory minute orders – not grounded in fact, and stemming purely from racial and gender discriminatory attitude of Defendant BCB toward Plaintiff Reshma Kamath.

47. Absolute judicial immunity has several exceptions such as that of injunctive relief, declaratory relief, and/or money damages. Each can be pled inconsistently and consistently; and often could be contingent upon the 1983 action under Fourteenth Amendment of the United States Constitution.

48. As an actual and proximate result of Defendants' aforementioned acts and omissions, Plaintiff Reshma Kamath was damaged in amounts to be determined at trial, but no less than $20.50 million in damages, because of the *ultra vires* action.

49. Defendants' conduct was oppressive, willful and/or wanton, so as to justify an award of punitive damages.

50. Defendants' conduct warrants injunctive relief.

51. Defendants' conduct warrants declaratory relief.

52. Plaintiff Reshma Kamath requests the relief requested below in the prayer for relief.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## INJUNCTIVE RELIEF

53. Plaintiff incorporates via reference and restates the allegations contained in the preceding paragraphs as though set forth in full herein.

54. The reach of judicial immunity, which the United States Supreme Court considered in the wake of Consumers Union in Pulliam v. Allen (1984) 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 ( Pulliam ), concluding judicial immunity did not, in that case, bar injunctive relief.

55. The high court first observed that the appellate courts that had addressed the issue were "in agreement" that judicial immunity does not categorically bar injunctive relief. ( Id. at p. 528, 104 S.Ct. 1970.) The court next pointed out that while at common law "there was no such thing as an injunction against a judge" due to the jurisdictional limitations of the English courts (Id. at p. 529, 104 S.Ct. 1970), a "parallel" could be found "in the collateral prospective relief available against judges through the use of the King's prerogative writs." (Ibid. ) After an extensive discussion of the historical use of such writs, the court concluded this indicated there was no "inconsistency" between judicial  immunity principles protecting the courts and judiciary from

harassing litigation, and the availability of collateral injunctive relief "in exceptional cases." (Id. at p. 536, 104 S.Ct. 1970.)

56. The high court then reviewed its own precedent, observing it was "fully consistent with the common law's rejection of a rule of judicial immunity from prospective relief" and the court had never embraced a rule of judicial immunity from such relief. (Pulliam, supra , 466 U.S. at p. 536, 104 S.Ct. 1970.) It pointed out "injunctive relief against a judge raises concerns different from those addressed by the protection of judges from damages awards," and that the requirements for obtaining equitable relief—an inadequate remedy at law and irreparable harm—"severely curtail the risk that judges will be harassed and their independence compromised by the threat of having to defend themselves against suits by disgruntled litigants." (Id. at pp. 537-538, 104 S.Ct. 1970.)

57. As a result of the court's conclusion that judicial immunity did not foreclose prospective injunctive relief, the judge against whom such relief had been granted (based on actions that were indisputably judicial in character) was subject to an attorney fee award under title 42 United States Code section 1988. (Pulliam , supra , 466 U.S. at pp. 541-544, 104 S.Ct. 1970.)

58. Here, Defendant BCB violated a declaratory decree, and/or this is a situation, where declaratory relief is unavailable, thus to Plaintiff Reshma has an end-run around Defendants' claims of absolute judicial immunity.

59. Defendants have caused irreparable harm and damages to Plaintiff Reshma.

60. Defendants' harm to Plaintiff Reshma is imminent and immediate.

61. Defendants' harm to Plaintiff Reshma is on-going.

62. Defendants have caused harm to Plaintiff Reshma while Plaintiff was in the courthouse premises while appearing in-person in department 17 of the courthouse.

63. Plaintiff experienced irreparable harm, and incurred damages along with attorneys' fees.

64. Plaintiff requests injunctive relief prospectively, because Defendants' harm is on-going, immediate and imminent.

65. Plaintiff requests the relief requested below in the prayer for relief.

## SECOND CAUSE OF ACTION

## NEGLIGENCE

66. Plaintiff incorporates via reference and restates the allegations contained in the preceding paragraphs as though set forth in full herein.

67. Defendants have a fiduciary duty towards Plaintiff Reshma.

68. Defendants have a fiduciary duty to maintain safety and security within the premises of the courthouse - while Plaintiff Reshma is appearing in-person in department 17, in the hallway; and while Plaintiff Reshma enters the premises of the courthouse.

69. Defendants have a fiduciary duty to provide due process of notice and opportunity to be heard to Plaintiff Reshma.

70. Defendants breached this fiduciary duty towards Plaintiff Reshma each time that Plaintiff Reshma safety and security was breached and harmed.

71. As an actual and proximate result of Defendants' aforementioned acts and omissions, Plaintiff was damaged in amounts to be determined at trial, but no less than $20.50 million in damages.

72. Defendants' conduct was oppressive, willful and/or wanton, so as to justify an award of punitive damages.

73. Plaintiff Reshma requests the relief requested below in the prayer for relief.

## THIRD CAUSE OF ACTION

## RACIAL AND GENDER DISCRIMINATION –

## FOURTEENTH AMENDMENT – Title 42 U.S. Code §1983

74. Plaintiff Reshma incorporates via reference and restates the allegations contained in the preceding paragraphs as though set forth in full herein.

75. Title 42 U.S. Code §1983 and other federal civil rights laws for the redress of violations of these rights, applies to "state action," and the actions of county and municipal government. See Fonda v. Gray, 1983(CA 9) CAL 707 F.2d. 435.)

76. Defendant BCB is a state actor. Defendant Kern County Superior Court is a state actor. Defendant Bradshaw. Defendant Deputy Sheriff is a state actor.

77. The invidious and systemic discrimination by state actors, and agents, employees, and related state actors falls under the federal 1983 Action.

78. Plaintiff Reshma has experienced gender discrimination, racial discrimination, and further discrimination to an immigrant from Defendants' conduct.

79. Plaintiff Reshma was assaulted in court by the Defendant Deputy Sheriff creeping up behind her and flinging the papers towards her from behind where she saw him over her left shoulder.

80. Plaintiff Reshma had to witness a strange posture from the Defendant Deputy Sheriff when Plaintiff knocked on the outer external door of the courthouse department 17 where Defendant Deputy Sheriff made a strange body posture contouring his body across the door.

81. Defendant Deputy Sheriff's conduct was violative of the fourth amendment search and seizure laws.

82. Defendant Deputy Sheriff's conduct was violative of the fourteenth amendment racial and gender discrimination laws.

83. Defendant Deputy Sheriff's conduct was in the presence and immediate view of Defendant BCB.

84. Defendant Deputy Sheriff's and Defendant BCB's conduct were made aware to Defendant Eric Bradshaw – where the latter as the presiding judicial officer

took no action. The omission is alleged evidence that the presiding judicial officer was shirking in his duties, and thus, negligent.

85. As an actual and proximate result of Defendants' aforementioned acts and omissions, Plaintiff has been damaged in amounts to be determined at trial, but no less than $20.50 million in damages.

86. Defendants' conduct was oppressive, willful and/or wanton, so as to justify an award of punitive damages.

87. Plaintiff Reshma Kamath requests the relief requested below in the prayer for relief.

## **FOURTH CAUSE OF ACTION**

## **DECLARATORY RELIEF**

88. Plaintiff incorporates via reference and restate the allegations contained in the preceding paragraphs as though set forth in full herein.

89. It is generally recognized by the federal courts that judicial immunity, unlike legislative immunity, does not foreclose suit for prospective declaratory relief and in limited circumstances does not foreclose injunctive relief. (See Justice Network Inc. v. Craighead County (8th Cir. 2019) 931 F.3d 753, 763- 764 ( Justice Network .))

90. Judicial immunity "does not absolutely insulate judicial officers from declaratory or injunctive relief," (Greene v. Zank (1984) 158 Cal.App.3d 497, 204 Cal.Rptr. 770 (Greene).)

91. In this case, there is an "actual controversy" in Plaintiff entertaining a suit for declaratory relief. (See, e.g., Communities for a Better Environment v. State Energy Resources Conservation & Development Com. (2017) 19 Cal.App.5th 725, 732-734, 227 Cal.Rptr.3d 486 ; Environmental Defense Project of Sierra County v. County of Sierra (2008) 158 Cal.App.4th 877, 885, 70 Cal.Rptr.3d 474.

92. An actual controversy, such as in this case, against Defendant BCB, can "encompass[ ] a probable future controversy relating to the legal rights and duties of the parties," although a "probable future controversy must be ripe," meaning" 'the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' " (Ibid. )

93. Defendant BCB can issue a bench warrant for arrest with no cause, and no reason – where there was no basis in contempt.

94. Defendant BCB has made a falsified order of contempt.

95. Defendant BCB engages in supporting white male actors in court.

96. Defendant BCB had no basis for any order of contempt.

97. Defendant BCB was bolstering and supporting the action of Defendant Deputy Sheriff in his "never before seen action."

98. Defendant Deputy Sheriff has made a falsified order of alleged misdemeanor while in court, and while assaulting Plaintiff Reshma with papers from behind her where she saw the action of Deputy Sheriff.

99. Defendant Deputy Sheriff has barely ever interacted with Indian people, including Plaintiff Reshma and her clients. Defendant Deputy Sheriff assaulted Plaintiff Reshma with papers from behind her where she saw the action of Deputy Sheriff. Such assault and actions remain imminent, on-going, and immediate, because the trial will allegedly commence on March 27, 2023, and may go on for the duration of the week. The defendants maybe put on notice based on this alleged federal complaint that will be served upon each of them on Monday, March 27, 2023. As an actual and proximate result of Defendants' aforementioned acts and omissions, Plaintiff was damaged in amounts to be determined at trial, but no less than $20.50 million in damages. Defendants' conduct must be curbed, and declaratory relief must be granted in favor of Plaintiff Reshma Kamath.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Reshma Kamath respectfully seeks judgment against any and all Defendants as stated below:

1. That Plaintiff Reshma Kamath be awarded $20.50 million according to proof at the time of trial from each and every defendant, individually, jointly, severally, and collectively;

2. That Plaintiff Reshma Kamath be issued prospective injunctive relief;

3. That Plaintiff Reshma Kamath be issued declaratory relief;

4.  That Plaintiff Reshma Kamath be awarded general, actual, and special damages according to proof at the time of trial;

5.  That Plaintiff Reshma Kamath be awarded incidental, compensatory, and expectancy damages according to proof at the time of trial;

6.  That Plaintiff Reshma Kamath be awarded punitive damages according to proof at the time of trial;

7.  That Plaintiff Reshma Kamath be awarded double and treble damages for distress, stress, and anguish, according to proof at the time of trial;

8.  That Plaintiff Reshma Kamath be awarded pre-and post-judgment interest accrued to date;

9.  That Plaintiff Reshma Kamath be awarded costs and fees of suit incurred herein;

10. That Plaintiff Reshma Kamath be awarded their reasonable attorneys' fees incurred in this action;

11. That Plaintiff Reshma Kamath be awarded such other and further relief that the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs request a jury trial for all issues so triable that are raised herein or that hereinafter may be raised in this action.

///

///

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Respectfully submitted,*

DATED:  **March 26, 2023**

*/S/ Reshma Kamath*

**LAW OFFICE OF RESHMA KAMATH**
Reshma Kamath, Plaintiff

COMPLAINT