1
2
3
4

**LAW OFFICE OF RESHMA KAMATH**
Reshma Kamath, Cal. Bar No. 333800,
700 El Camino Real, Suite 120, #1084,
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
Plaintiff **RESHMA KAMATH**, *in propria persona*

5
6
7
8

**IN AND FOR THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION**

9
10
11
12
13
14
15
16
17
18
19
20
21

RESHMA KAMATH, an individual,


            Plaintiff,

        v.

BERNARD C. BARMANN, JR., a judge;
DEPUTY SHERIFF, a sheriff; ERIC
BRADSHAW, a presiding judge; THE
SUPERIOR COURT OF CALIFORNIA,
COUNTY OF KERN; an administrative
body; and DOES 1-10, INCLUSIVE,

            Defendants.

**Case No.: 1:23-cv-00461-JLT-CDB**

[*Assigned to Hon. Judge Jennifer L. Thurston*]


**PLAINTIFF RESHMA KAMATH'S OPPOSITION**




**HEARING:**
**DATE: 07/10/2023**
**TIME: 09:00 A.M. PDT**
**DEP'T: Courtroom 4 (JLT)**

22
23
24
25
26
27
28

        *TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEY(S) OF RECORD HEREIN:*

## OPPOSITION

## I.

## INTRODUCTION

It is a long-established general rule that a judge is not to be held answerable for acts performed in his judicial capacity. *City of Santa Clara v. County of Santa Clara* (1969) 1 Cal.App.3d 493, 498 [81 Cal.Rptr. 643].

However, for a court to act **without jurisdiction** "is, by very definition, for a court to act ultra vires." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The judge is immune unless "he has acted in the clear absence of all jurisdiction. [Citations.]" *Greene v. Zank* (1984) 158 Cal.App.3d 497, 507 [204 Cal.Rptr. 770].

But when a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction, judicial immunity is lost. See *Bradley v. Fisher*, 80 U.S. (13 Wall.) at 351 ("when the want of jurisdiction is known to the judge, no excuse is permissible"); *Turner v. Raynes*, 611 F.2d 92, 95 (5th Cir. 1980); *Stump v. Sparkman*, 435 U.S. at 356, 98 S.Ct. at 1104 is consistent with the view that "a clearly inordinate exercise of unconferred jurisdiction by a judge — one so crass as to establish that he embarked on it either knowingly or recklessly — subjects him to personal liability."

An absence of subject matter jurisdiction is defined as follows: "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. . . ." *Abelleira v.*

*District Court of Appeal* (1941) 17 Cal.2d 280, 288; *accord, People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 66; see also *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 42 [lack of subject matter jurisdiction is absence of power to hear a case].) As explained in *Estate of Gardiner* (1941) 45 Cal.App.2d 559, 562: "Where a statute specifically inhibits an act, it is error for the court to do the thing prohibited."

A clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction. *Bradley,* 80 U.S. (13 Wall.) at 351-52. See also *Rankin v. Howard*, 633 F.2d 844, 848-49 (9th Cir. 1980) ("a judge who acts in the clear and complete absence of personal jurisdiction **loses his judicial immunity**") [**Emphasis Added**], cert. denied, 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981).

## II.

## ARGUMENT

## I. DEFENDANT BARMANN, JR. HAS A CLEAR ABSENCE OF ALL JURISDICTION OVER SUBJECT MATTER

### <u>Lebbos v. State Bar</u>, 165 Cal.App.3d 656 (Cal. Ct. App. 1985)

The doctrine of absolute judicial immunity has its roots in the English common law, and has been applied in this state for more than a century. *Howard v. Drapkin* (1990) 222 Cal.App.3d 843, 851–852, 271 Cal.Rptr. 893. It protects judges from civil lawsuits for acts performed as part of the judicial function. It is **limited to acts** " ' "normally performed by a judge," ' " and does not include purely administrative or legislative acts. *Id.* at p. 851, 271

1

2

Cal.Rptr. 893. Immunity applies only **if** the acts fall within the scope of the judicial function, even if the conduct complained of was malicious or corrupt. *Id.* at p. 851, 271 Cal.Rptr. 893.

3

4

On March 27, 2023, this above-captioned action was initiated.

5

6

On March 27, 2023, Plaintiff notified Defendant Barmann, Jr. of this above-captioned action. Defendant Barmann, Jr., then requested a copy of the complaint to read.

7

8

9

Defendant Barmann, Jr. continued to adjudicate over the state-court litigation where Plaintiff was defense counsel.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The above-captioned litigation is akin to a mandamus proceeding, and/or disqualification proceeding. Specifically, the injunctive relief claim (that is on-going and not moot, because since March 27, 2023, Defendant Barmann, Jr. in his **racist display** has **charged and "sentenced"** Plaintiff Reshma Kamath with "criminal contempt" for "unlawful, disorderly" conduct in various different orders). For one such criminal contempt order, **Defendant Barmann, Jr., failed to even have valid jurisdiction**, because he made **an incomplete, improper CMRA service. Plaintiff did not even give him jurisdiction, because Plaintiff, pursuant to the code, <u>did not appear to argue and did not file any response to Defendant's frivolous criminal contempt order</u>. Thus, Defendant Barmann, Jr., completely lacked any jurisdiction over Plaintiff.**

24

25

26

This repeated citation coming from a prejudicial white, male judge is not normal. It is the basis of this country's history of **white superiority**, and the continued **white America**

27

28

---

4

culture that is getting promoted each day. The brunt of this is faced by women of color, immigrants, minorities, and ambitious women.

A court with jurisdiction of the subject matter may be held to lack jurisdiction to act while the judge before whom the matter is pending is disqualified and pending a determination of the issue of disqualification. The problem was prior analyzed as an act in excess of jurisdiction, wherein the acts of a disqualified judge are at most voidable, but not void. 2 *Witkin, Cal. Procedure, op. cit. supra*, Courts, §§ 75-76; *Urias v. Harris Farms, Inc., supra*, 234 Cal.App.3d at p. 424; see *White v. Renck* (1980) 108 Cal.App.3d 835, 839 [166 Cal.Rptr. 701].

*Witkin* gave several reasons for concluding that the acts of a disqualified judge do not divest the court, as distinguished from the disqualified judge, of subject matter jurisdiction to undertake appropriate remedial action. 2 *Witkin, Cal. Procedure, op. cit. supra*, Courts, §75.

The acts of a judge subject to disqualification are void or, according to some authorities, voidable. *Giometti v. Etienne* (1934) 219 Cal. 687, 688-689 [28 P.2d 913]; *Urias, supra,* 234 Cal.App.3d at p. 424; *Betz v. Pankow* (1993) 16 Cal.App.4th 931, 939-940 [20 Cal.Rptr.2d 841]. Relief is available to a party who, with due diligence, discovers the grounds for disqualification only after judgment is entered or appeal filed.

Defendant Barmann, Jr., as the judge, needs to have tangible proof for his violation of judicial ethical duties. Defendant Barmann, Jr. must have an audio and video display of every

hearing from May 2022 where Plaintiff appeared before him. Prior courts may have held judges to a lesser standard; however, in 2023, and for the next decade, one will find that judicial officer's racism, misogyny, trickery, deceit, and gamesmanship will **NOT** be tolerated.

A.    *__The Nonjudicial Agreement__*

The *Stump* Court identified two specific factors to be considered in determining whether an act is "judicial": "the nature of the act itself, i. e., whether it is a function normally performed by a judge, and . . . the expectations of the parties, i. e., whether they dealt with the judge in his judicial capacity." 435 U.S. at 362, 98 S.Ct. at 1107. The Court must also consider the underlying purpose of judicial immunity. *Gregory v. Thompson*, 500 F.2d 59, 63 (9th Cir. 1974).

For instance, in this case, Defendant Barmann, Jr., appeared before Judge Jennifer Thurston in this case in 2019, while Defendant was an attorney at Kuhs & Parker. It is more than likely that the principal of Kuhs & Parker principal has had a dialogue about this federal case.

In and around the years between, 2011-2103, Defendant Barmann, Jr., took the deposition, and/or was involved with the deposition of litigants and witnesses, such as Dr. Dhillon and Mrs. Kaur Sidhu. Defendant Barmann, Jr., while he worked at Kuhs & Parker worked on matters on a financial bank institution matter with individuals known as Michael Abril; and, was aware of confidential, sensitive information in deposition transcripts, and

related discovery of Dr. Dhillon and Mrs. Kaur Sidhu. Yet, Defendant Barmann, Jr. ensued in 2023 as judicial officer against these very individuals (lacking patience to listen to Plaintiff, often condescending and demeaning). The amount of familiarity that Defendant Barmann, Jr., showed towards George Martin and Seth O'Dell requires further investigation as well.

The *Stump* majority emphasized behavioral factors in defining a judicial act. Although a party conniving with a judge to predetermine the outcome of a judicial proceeding may deal with him in his "judicial capacity," **the other party's expectation**, i.e., judicial impartiality, is actively frustrated by the scheme. In any event, the agreement is **<u>not "a function normally performed by a judge."</u>** [**<u>Emphasis Added</u>**]. It is the antithesis of the "principled and fearless decision-making" that judicial immunity exists to protect. See *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967); *Gregory v. Thompson*, 500 F.2d at 63.

In this instant matter, Defendant Barmann, Jr. has a clear absence of all jurisdiction over the subject matter and parties. Defendant Barmann, Jr., lacks personal jurisdiction over the state-court case(s), as well was engaged in non-judicial agreement with parties and their counsel.

///

///

///

## 1. DEFENDANT BARMANN, JR. WAS A KUHS & PARKER ATTORNEY FROM 2011-2019 WHEN HE LITIGATED CASES WHERE LITIGANTS WERE DEPOSED; THUS, DEFENDANT BARMANN, JR. HAS NO JURISDICTION AS A JUDICIAL OFFICER OVER THE CASE WHERE PLAINTIFF APPEARED AS DEFENSE COUNSEL FOR THOSE LITIGANTS IN 2023

Defendant Barmann, Jr., has a clear absence of all jurisdiction over the case.

The *Stump* Court did say that "the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him." *Stump v. Sparkman*, 435 U.S. at 356, 98 S.Ct. at 1104.

When the Supreme Court first formulated the "clear absence" standard, however, it stated that the principle of immunity applied when there was "jurisdiction of both subject and person." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 352 (1872), 20 L.Ed. 646.

"An absence of personal jurisdiction may be said to destroy "all jurisdiction" because the requirements of subject matter and personal jurisdiction are conjunctional. Both must be met before a court has authority to adjudicate the rights of parties to a dispute." *Rankin v. Howard* (9th Cir. 1980) 633 F.2d 844, 848.

If a court lacks jurisdiction over a party, then it lacks "all jurisdiction" to adjudicate that party's rights, whether or not the subject matter is properly before it. See, e.g., *Kulko v. Superior Court*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978) ("[i]t has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the

defendant.") (citations omitted); *In re Wellman*, 3 Kan. App. 100, 45 P. 726, 727 (1896) (ex parte guardianship proceeding would be a "flagrant violation" of due process, rendering any order null and void).

Central to impartial decision-making by judges is the need for them to make **disclosures** that may give rise to a challenge to the judge's impartiality by one of the parties, even if the judge concludes that he or she is not disqualified. The responsibility of judges to make such disclosures is well-codified under California law. Canon 3E(2) of the California Code of Judicial Ethics states: "In all trial proceedings, a judge shall disclose on the record information that is reasonably relevant to the question of disqualification under Code of Civil Procedure section 170.1, even if the judge believes there is no actual basis for disqualification." For trial judges, noncompliance with this ethical disclosure requirement may subject the judge to discipline by the Commission on Judicial Performance. (Cal. Const., art. VI, § 18.)

In this instant matter, Defendant Barmann, Jr., not only failed to make the disclosures, when questioned about the conflict-of-interest, Defendant Barmann, Jr. failed to check his conflict-of-interest; and, ignored any questions related to his **lack of jurisdictional capacity** as judicial officer. Thus, each and every act of Defendant Barmann, Jr. in the state court action(s), was not only *ultra vires*, they were further completely ministerial without the scope of the judicial functions.

*///*

**(a) DEFENDANT BARMANN, JR. AND DEPUTY SHERIFF BAILIFF CREATING AN "ATMOSPHERE OF THREAT" IN STATE-COURT CEASED TO BE "JUDICIAL"/ "QUASI-JUDICIAL" AND PRESIDING JUDGE ERIC J. BRADSHAW'S INACTION FOR SAFETY MEASURES IS GROUNDS FOR NEGLIGENCE**

Indeed, when the limits of legitimate authority are wholly abandoned, the judge's act may cease to be "judicial." See, e. g., *Lopez v. Vanderwater*, 620 F.2d 1229, 1235 (7th Cir. 1980) (judge's prosecutorial acts were nonjudicial; no immunity for such acts); *Gregory v. Thompson*, 500 F.2d 59, 64 (9th Cir. 1974) (judge's use of physical force to evict person from courtroom was "simply not an act of a judicial nature"). Cf. Note, Filling the Void: Judicial Power and Jurisdictional Attacks on Judgments, 87 Yale L.J. 164, 165 (1977) (at English common law proceedings in court without jurisdiction were **deemed coram non judice- "before one not a judge"**). [**Emphasis Added**.]

Defendant Barmann, Jr. and the Deputy Sheriff Bailiff from March 27, 2023, for over a month and then over a week created an **"atmosphere of threat"** in the courtroom. This conduct, and lack thereof, **ceased** to be "judicial" and "quasi-judicial."

Defendant Barmann, Jr.'s conduct included slamming and banging his Chamber's door several times; quivering and looking very angry while on the bench; not listening when Plaintiff speak on substantive matters; picking on the only Punjabi-person in the room wearing a turban when a day's matter ended; not questioning whether a white person, Jack Wright's spouse (also white) who was in the room whether she was witness; was constantly harassing and demeaning Plaintiff in this matter; without basis citing Plaintiff in this matter

for contempt, unlawful and disorderly conduct in extension of his racism and misogyny towards women of color. He particularly has a bias toward women of color who're tanned and darker-skinned. This is skin-tone bias, as well as facial feature bias.

The presiding judge Eric J. Bradshaw's inaction is grounds for *ultra vires* conduct as well as negligence, because there was a safety issue where he should have promptly acted – whether or not the threat was to a lawyer, i.e., Plaintiff; the litigants; the judge; and/or any other person. The utter failure of the Presiding Judge to act within his role as a presiding judicial officer of the County of Kern, Superior Court, shows women of color are not safe within the premises of the Court premises and Courtrooms.

Since the filing of this Federal Complaint, Defendant Barmann, Jr., contacted several deputy sheriff (not only the named sheriff bailiff) to stand guard at the door – not seated but have more than two deputy sheriffs in the room simultaneously – one standing with a gun strapped. The Bailiff at several times during civil arguments would walk up and start phone-calling additional reinforcement. At one point in February 2023, the sheriff Bailiff walked up behind the plaintiff and flung some papers at her citing her for "misdemeanor" for no visible and no contemptuous conduct. Only for speaking at a point in time when the Defendant Barmann, Jr. after listening to attorney Seth O'Dell for over twenty-minutes directed Plaintiff to speak. As soon as Plaintiff started speaking within half a sentence, the racist sheriff bailiff flung the papers and cited the Plaintiff. Thereafter, Defendant Barmann, Jr., in his racial prejudice, smiled, condescended Plaintiff, and then, often slammed his doors

taking recesses over one hour. Several times, the light-skinned court-reporter was late after break over thirty-forty minutes, and Defendant Barmann, Jr. was nonchalant, with no admonishments, and stating, "you're the only one here."

Defendant Barmann, Jr.'s atmosphere of threat towards was repeatedly made known to him. Defendant Barmann, Jr.'s Sheriff Bailiff's strange contortion body posture was made known to Defendant Barmann, Jr., and yet he took no action. Instead, each time, he reprimanded, admonished, and repeatedly sanctioned Plaintiff – the only Indian-American counsel in the case.

The White Male Attorneys constantly made mistakes, and harassed Plaintiff – they even made false representations in the courtroom, interrupted Plaintiff while speaking during her turn that Defendant Barmann, Jr. had instructed, and even submitted several perjured declarations about Plaintiff. Yet, Defendant Barmann, Jr., was constantly racist and misogynistic in the Courtroom.

Defendant Barmann, Jr.'s supporting of white men in the courtroom was repeatedly made known to him.

Defendant Barmann, Jr., thereafter, since filing of the federal action, has "cut and paste" isolated incidents in the courtroom and made up a little story in furtherance of his *ultra vires* conduct, and lack of jurisdiction over the Plaintiff, as well as the entire case and litigants.

Defendant Barmann, Jr., has purposely continued starting and stop several matters, including the TRO hearing and the trial, when Plaintiff had informed him that she lives over five hours away from the court in Arizona. Whether this is purely abusive behavior, because the judge can do what he can in his courtroom, and/or racial misogyny, the matter requires further investigation, discovery, and deposition.

Now, wherever, Plaintiff appears as attorney, based on Defendant Barmann, Jr.'s racism, misogyny, and false statements as judicial officer, the number of sheriffs have increased at each hearing. This also imputes to presiding Judge Eric Bradshaw's negligence.

**The "atmosphere of threat" is on-going, imminent, and there are several pending hearings before Defendant Barmann, Jr. in lower court. Thus, the injunctive relief claim is valid, and not moot.**

Because the limits of personal jurisdiction constrain judicial authority, acts taken in the absence of personal jurisdiction do not fall within the scope of legitimate decision making that judicial immunity is designed to protect. See *Gregory v. Thompson*, 500 F.2d at 63. The courts have concluded that a judge **who acts in the clear and complete absence of personal jurisdiction <u>loses his judicial immunity</u>.**

## II.   <u>DEFENDANT BARMANN, JR. LACKED PERSONAL JURISDICTION IN STATE COURT MATTER</u>

For a judge to be able to make decisions in a court case, the court must have personal jurisdiction over all of the parties to that court case.

A trial court lacks jurisdiction in a fundamental sense when it lacks personal jurisdiction over a party. *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288.) As such, any ensuing judgment is void and" 'vulnerable to direct or collateral attack at any time.'" *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660).

"In order to exercise jurisdiction over the subject matter, however, the court must secure personal jurisdiction over the defendant." *Schoch v. Superior Court*, 11 Cal.App.3d 1200, 1207 [90 Cal.Rptr. 365]; *Mattos v. Correia*, 274 Cal.App.2d 413, 419 [79 Cal.Rptr. 229]; *Worthley v. Worthley*, 44 Cal.2d 465, 474 [283 P.2d 19]; 2d Conflict of Laws, p. 103). For a **judge** to be able to make decisions in a court case, the **court** must have "**personal jurisdiction**" over all of the parties to that court case. However, in the state-court case, Defendant Barmann, Jr. failed to exercise personal (no waiver/no consent/no reply of Plaintiff to Defendant Barmann Jr.'s failed CMRA attempt in lieu of personal service as contempt order #1), and/or subject-matter jurisdiction over Plaintiff in this matter; and/or over defendants, Dr. Dhillon, Jalsa Palms BTI LLC, Henry Davis; and/or over Pinder Singh in related matters as well.

## 1. A DEPOSITION OF LITIGANT AND WITNESS DEPOSITION FROM 2011-2014 HAS DEFENDANT BARMANN, JR. APPEAR DURING DEPOSITIONS WHILE THE LATTER WAS ATTORNEY

Defendant Bernard C. Barmann, Jr., had on his State Bar profile,

"SBN 149890. Kuhs & Parker. P. O. Box 2205. 1200 Truxtun Avenue, Suite 200. Bakersfield, CA 93303. Telephone: (661) 322-4004" and **"2019-2020: Partner, Kuhs & Parker/ 2011-2019: Associate, Kuhs & Parker."**

In and around 2011, Defendant Barmann, Jr., was one of the attorneys at the law firm Kuhs & Parker. At this law firm, several attorneys, including Defendant Barmann, Jr., took the deposition of Mrs. Kaur Sidhu, and even Dr. Dhillon's discovery. Defendant Barmann, Jr. appeared several times during the depositions of Mrs. Kaur Sidhu.

A judicial officer may be disqualified based on an appearance of bias where "the judicial officer either has a personal or financial interest, has a familial relation to a party or attorney, or has been counsel to a party." *Gai v. City of Selma*, 68 Cal.App.4th at pp. 221–222, 79 Cal.Rptr.2d 910.

## 2. JUDGE JENNIFER THURSTON HAS PRIOR ADJUDICATED A CASE WHERE DEFENDANT BARMANN, JR. WAS ATTORNEY;

"It is a fundamental precept that federal courts are courts of limited jurisdiction," *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978), bound by the limits placed upon them by Article III of the United States Constitution and by Congress, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Urbina et al v. Freedom Mortgage Corporation, Case Number: 1:2019cv01471

Plaintiff:     Neri Urbina and Leonila Urbina

Defendant:   Freedom Mortgage Corporation

Case Number:       1:2019cv01471

Filed: October 16, 2019

Court: US District Court for the Eastern District of California

Presiding Judge:    Lawrence J O'Neill

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Referring Judge:  Jennifer L Thurston**

Nature of Suit:      Other Statutory Actions

Cause of Action:    15 U.S.C. § 1692.

"

| November 12, 2019 | 🗡 **Filing 14** PRO HAC VICE APPLICATION and PROPOSED ORDER submitted by Neri Urbina. (Filing fee $ 225, receipt number 0972-8564350) **(Barmann, Bernard)** |
|---|---|
| November 12, 2019 | 🗡 **Filing 13** PRO HAC VICE APPLICATION and PROPOSED ORDER submitted by Neri Urbina. (Filing fee $ 225, receipt number 0972-8564318) **(Barmann, Bernard)** |

"

## III. *ULTRA VIRES* CONDUCT SUPERSEDES ABSOLUTE JUDICIAL IMMUNITY

" '[O]ur cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. [Citations.] Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.' " *Soliz v. Williams* (1999) 74 Cal.App.4th 577, 592 [88 Cal.Rptr.2d 184]; *Regan v. Price* (2005) 131 Cal.App.4th 1491.

The *Gregory* court first noted that,

"[w]hen courts have spoken of immunity for acts within the jurisdiction of a judge, they have declared that the doctrine insulates judges from civil liability 'for acts committed within their judicial jurisdiction,' or 'for   acts   within   [their] judicial role,' [citation] or for `their  judicial acts.' [Citation.] Thus judicial immunity does  not  automatically  attach  to  all  categories  of  conduct  in  which  a  judge  may

16

properly engage, but only to those acts that are of a judicial nature." *Gregory v. Thompson* (9th Cir. 1974) 500 F.2d 59.

## IV.   OBJECTIVE RACIAL BIAS BEYOND MALICE AND CORRUPT INTENT

### 1.   PROMOTION OF WHITE CULTURE IN THE COURTROOM

As is common in California courtrooms, and most American courtrooms, the promotion of White culture, and heteronormative, racial misogyny, is predominant.

One of the glaring traits of such predominant White culture is, *inter alia*, (i) often criminalizing people who're non-White; (ii) non-conformist to White culture; (iii) display characteristics that White people in their perception and imagination deem as strange and different; and, (iv) harsher sentencing; (v) more likely to sentence non-White whereas White individuals are not; (vi) not taking women of color's (and/or darker-skinned women's) safety seriously, versus damsel-in-distress of White, and/or lighter-skinned women; (vii) non-belief of people of color/women of color's truths; (viii) falsely associating negative traits (often non-existent occurrences and traits) with people of color such as "disability," "crazy," "angry,"                 "yelling,"                 "snapping,"                 "jealous, and such; (ix) jumping to negative conclusions about people of color; (x) more likely to believe White/majority/male populations; and/or, (xi) not addressing substantive issues while applying White ways of thinking to people of color in a condescending, demeaning, patronizing, and inferior manner. ('White' is not used as 'color of skin' in any context – it is used as a racial, and/or ethnic-socio-econo-cultural grouping of Caucasian people).

Such features were demonstrated in the Defendant County of Kern, Defendant Barmann, Jr., Defendant Bradshaw, Defendant Deputy Sheriff Bailiff – who has not yet appeared in this case. Not just White people do this, anyone who believes in this White superiority culture – even people of color, including men of color demonstrate such attributes. This is rampant in California courts.

The "truths" (not) of White, and/or male individuals is taken as true, real, and given utmost weight of credibility. However, when women of color, immigrants, minorities in the legal profession speak, judicial officers, clerks, and law enforcement, alike, mistreat and negate such non-mainstream.

Defendant Barmann, Jr., has demonstrated that he was constantly and visibly angry in the courtroom; he witnessed a civil assault of his deputy sheriff flinging papers from behind Plaintiff; he stated several comments about Plaintiff; he cannot bear women of color who're ambitious, more successful, and at an upward trajectory than him.

Defendant Barmann, Jr., made a slew of excuses in his filings in court. Instead of addressing substantive, factual issues in the case, Defendant Barmann, Jr., often reverted to his personal stories, about women in his life, some Indian doctor he visits, and a "step-daughter." Such shameful and regressive comments from Defendant Barmann, Jr., demonstrated his cowardice that he could not address the blatant racial misogyny in his courtroom; and, played along in his white boys' club during the state case and state trial. For this to occur in 2023 is astonishing to say the least.

To think that the County of Kern, Superior Court does not even have one female and woman security guard and/or officer at the front-door metal detector check-in; and/or in the courtrooms. The overwhelming number of male sheriffs and security guards is yet another issue for the Defendant County of Kern, and Defendant Bradshaw in negligence and failure to abide pursuant to each of their fiduciary duties. The Defendant Kern County's premises liability is obviated in the Complaint. The Defendant Bradshaw's lethargy and complete inaction in this matter in his failure to investigate as the presiding judge is not only shocking, it is also a complete abomination for the California courts. The Defendant Deputy Sheriff's conduct is commonplace given the state of law enforcement in America. The Defendant Barmann, Jr.'s misrepresentations, false comments, and racial misogyny, shows the California Courts' lack of accountability, and transparency, in reprimanding judicial officers for their acts and misconduct.

The fact that since the filing of the Complaint, several incidents have occurred that obviated the need for an Amended Complaint; and, for the Judicial Council Attorney to call Plaintiff's (i.e., female counsel's) e-mails, "tough guy nonsense," and then submitting a half-truth declaration lacking in substance and form. [FYI: for the court who should recuse herself: Plaintiff very well knows the "matter of right" amended complaint prior to defendant appearing with responsive pleading; however, in this case, Plaintiff is an Attorney and often busy with many of her clients' matter, thus, had timely and properly requested the extension

19

via stipulation that Derick forged.] Plaintiff very much has 1983 claims, as well as defamation/slander per se/libel/forgery, *inter alia*.

Plaintiff does not need to conform to white culture, white people's way of thinking, legal precedence that is essentially white people's way of thinking, and those people of color who're yes-people to white judges' homogenous, ignorant, and typical way of thinking. Neither does Plaintiff need to be liked by white judges, and/or like any white judges and/or those judges of color who promote white culture in the guise of law. What matters is Plaintiff must adhere to substantive merits, as does any judicial officer - who must pay heed equally to Plaintiff, as the judicial officer does when white, and/or male attorneys appear before him/her. Most women know that men particularly harass and threaten women when such men see the woman is alone. Such is the case with Plaintiff as a sole proprietor, and a minority immigrant woman in the legal profession. Further, even the litigants in the state-case were minorities in America.

If this is democratic America, then the courtrooms and law enforcement should not demonstrate archaic practices. Defendants have demonstrated that they will adhere to majority cultures in the courtrooms, mainly that of White, and/or Latin culture. The racial misogyny in the California courts runs deep and far up.

### 2. OBJECTIVE RACIAL BIAS GOES BEYOND "MALICIOUS" AND/OR "CORRUPT INTENT";

Defendant Barmann, Jr.'s conduct of objective racial bias has surpassed "malicious" and/or "corrupt intent."

*Assuming arguendo*, Defendant Barmann, Jr.'s temper, anger, lack of patience, irritability, slamming Chamber doors, not letting Indian/Indian-American witnesses speak, communicating *ex-parte* with litigants, not letting Plaintiff appear via videoconference while allowing her client to appear in such a manner, repeatedly citing Plaintiff may establish his judicial decorum in court; even, then there is an equal and likely argument that the conduct of Defendant Barmann, Jr., is objective racial bias. Even after he listens to a white, male attorney(s) for over half an hour rambling on, Defendant Barmann, Jr., does not allow Plaintiff to speak on substantive issues.

After Defendant Barmann, Jr., displayed his constant racial bias for half a year, Plaintiff finally called out Defendant Barmann, Jr.'s racism in filings and pleadings.

Defendant Barmann, Jr., then used the targeted, invidious, racial misogyny he had displayed as one more clever part of his racist "orders" something along the times of "oh now plaintiff did not even apologize and then she filed the comments about racism."

Defendant Barmann, Jr., has gotten away with a lot of his racial misogyny – it is clear he was divorced in 2011 – and often, relies on excuses about some past embellishments to circumvent his current racial misogyny as a judicial officer in County of Kern.

Being a judicial officer since 2019 gives Defendant Barmann, Jr., a blank check to do and speak as he intends. The fact that he misuses his authority, power and privilege to abuse women of color, immigrants, older women, and minorities in the legal profession, shows that his conduct was ministerial and *ultra vires.*

Defendant Barmann, Jr., needs an independent mental health examination (IME) that he must be subject to in this case.

### 3. DEFENDANT BARMANN, JR.'S CONDUCT WAS MINISTERIAL.

The case hinges on whether Defendant Barmann, Jr.'s conduct was a ministerial, not a judicial act, and ministerial acts are not entitled to judicial immunity. Courts have acknowledged that "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts.

By analogy, for example, in *Ex parte Virginia*, 100 U.S. 339, 25 L.Ed. 676 (1880), for example, th[e Supreme] Court declined to extend immunity to a county judge who had been charged in a criminal indictment with discriminating on the basis of race in selecting trial jurors for the county's courts. *Forrester v. White* (1988) 484 U.S. 219, 228, 108 S.Ct. 538, 98 L.Ed.2d 555.) The court reasoned that "[w]hether the act done by him was judicial or not is to be determined by its character, and not by the character of the agent," and [t]he duty of selecting jurors might as well have been committed to a private person as to one holding the office of a judge. *Ex parte Virginia*, at p. 348; see also *In re Castillo* (9th Cir. 2002) 297 F.3d 940, 952 ["when determining whether a function is judicial in nature, a court must focus on the 'ultimate act' rather than the constituent parts of the act ].

*///*

## V. DAMAGES AND INJUNCTIVE RELIEF.

Where a court or judge is named as respondent (as in a mandamus proceeding) the award of costs "cannot run against it or him if it be found the proceeding was defended in good faith." *Oksner v. Superior Court* (1964) 229 Cal.App.2d 672, 690 [ 40 Cal.Rptr. 621].) But this rule has never precluded an award of costs (not to include attorney fees under *Code Civ. Proc.,* § 1095) against an unsuccessful real party in interest. *Lerner v. Superior Court* (1952) 38 Cal.2d 676, 686-687 [242 Cal.Rptr. 321]. The court in *McCarthy v. Superior Court* (1944) 65 Cal.App.2d 42 [149 Cal.Rptr. 871], made this differential analysis of the responsibility for costs under *Code of Civil Procedure* section 1095, reasoning:

> "[A]s to both damages and costs, we are of the opinion that the provisions of section 1095 have no application to a proceeding such as this, brought against a superior court to restrain the erroneous exercise of judicial power in litigation between private individuals, to which the state is not a party, in which it is in no way interested, and wherein it has no right of representation."

Further,

> ". . . and while it is true that a judge of the superior court is deemed to be a state officer and the common practice is to join him as a party to a mandamus or prohibition proceeding which has arisen out of a matter pending or determined in the court over which he presides, it is the tribunal itself, the superior court, that is the respondent in the mandamus or prohibition proceeding, and the writ if issued is directed against the superior court. The real respondent is the court, and it is not a `state, county or municipal officer' within the meaning of section 1095."

Defendant Barmann, Jr. must be subject to a Judicial Commission on Performance investigation – however, given that he knows how to appear on the record; and, is a very experienced attorney, who knows how to make people believe his half-citations of code, law,

statutes, and rules, Defendant Barmann, Jr., may get away with a lot. However, this case must afford Plaintiff relief, in that Defendant Barmann, Jr. should not be a judge before her, and that she be awarded damages for the misconduct of each Defendant in this above-captioned matter.

There are about **five declarations from Dr. Dhillon; Jaspreet Singh; Pinder Singh; Iqbal Singh; as well as from Plaintiff, filed in the state court action**, to demonstrate Defendants' *ultra vires* and ministerial conduct.

Each of them will attest to Defendants' *ultra vires* and ministerial conduct as alleged in the Complaint. Had Plaintiff have had more time, then Plaintiff would have shown via snippets of the trial transcript, as well as the filings with the state court action (just as Defendant Barmann, Jr. had done with his snippets) as to what incidents had occurred in the state court. This will in an effort to show a clear absence of all jurisdiction, as well as *ultra vires*, ministerial conduct of Defendants.

## III.

## <u>CONCLUSION</u>

Thus, not only is there a basis to maintain the case in federal court based on the clear absence of all jurisdiction standard, there is also a basis on the grounds that Defendants performed ministerial acts. The *ultra vires* conduct, and equally lacking motion to dismiss brought, show that the Complaint has merit, and must be litigated with discovery and a trial.

Damages and injunctive relief must be properly afforded to Plaintiff Reshma Kamath for what she has suffered.

///

**DATED: June 15, 2023**                    **LAW OFFICE OF RESHMA KAMATH**

*/S/ Reshma Kamath*

Reshma Kamath,
*In Propria Persona*

## PROOF OF SERVICE
### F.R.C.P. 5 / C.C.P. § 1013(a)(3), C.C.P. § 1010.6(a)(6) / Cal. R. Ct. R. 2.260

I'm employed in the County of San Mateo, California. I am over the age of 18, and not a party to the action. My business address is: 700 El Camino Real Suite 120, #1084, Menlo Park, CA 94025, and e-mail address is reshmakamath2021@gmail.com for electronic service. On June 15, 2023, I served the following document(s), via method(s) indicated below, on the parties in this action: SEE ATTACHED SERVICE LIST.

///

**PLAINTIFF RESHMA KAMATH'S OPPOSITION**

///

**ELECTRONIC SERVICE**: In electronically transmitting courtesy copies of the document(s) listed above to the email address(es) of the person(s) set forth on the attached service list. To my knowledge, the transmission was reported as complete and without error, as per the electronic service agreement between all parties and their attorneys of record, herein. [NOTICE OF C.C.P. SECTION 1010.6]

///

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct. Executed on the 15th day of June 2023 electronically.

///

*/s/ Reshma Kamath*

**Reshma Kamath**

26

1

**<u>SERVICE LIST</u>**

Derick

2

Derick E. Konz Attorney - Partner

3

Angelo, Kilday & Kilduff, LLP

601 University Ave., Suite 150

4

Sacramento, CA  95825

5

(916) 564-6100 ext. 232

6

<u>www.akk-law.com</u> ; E.: <u>dkonz@akk-law.com</u>

Rimsha Khan E.: <u>rkhan@akk-law.com</u>

7

Tami Redding E.: <u>tredding@akk-law.com</u>

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28