**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RESHMA KAMATH,<br><br>  Plaintiff,<br><br>  v.<br><br>BERNARD C BARMANN, et al.,<br><br>  Defendant. | Case No. 1:23-cv-00461 JLT CDB<br><br>ORDER GRANTING STATE COURT DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND<br><br>ORDER TO SHOW CAUSE RE DISMISSAL FOR FAILURE TO IDENTIFY AND SERVE DOE DEFENDANT AND OR FAILURE TO PROSECUTE<br><br>*21-day deadline*<br><br>(Doc. 8) |

### I. BACKGROUND

Plaintiff, attorney Reshma Kamath, brings this suit against the Kern County Superior Court; Kern County Superior Court Judge Bernard C. Barmann, Jr.; the Presiding Judge of that Court, Eric Bradshaw; and an unnamed Deputy Sheriff. (*See generally* Doc. 1.) The allegations appear to fall into three general categories. First, the Complaint describes various interactions Ms. Kamath had with Judge Barmann in the context of a state court case set before Judge Barmann in which Ms. Kamath was representing one or more of the parties. Among other things, the Complaint alleges that Judge Barmann: (a) denied requests to allow Ms. Kamath to properly prosecute her client's case (*id*., ¶¶ 22, 29); (b) issued some form of contempt order to Ms. Kamath and failed to properly serve her with that order (*id.*, ¶ 38–42); (c) made on and off-the record

1

racist comments directed at persons from Ms. Kamath's background (*id*., ¶ 1, 43); and (d) made other allegedly inappropriate and/or sexist comments. (*Id*., ¶¶ 45–46). Second, the Complaint describes interactions Ms. Kamath had with an unnamed Deputy Sheriff, who allegedly approached Ms. Kamath "from behind her with a stack of papers," flung the papers "toward her" (*id*., ¶¶ 32, 79), and exhibited a "strange body posture" when Plaintiff approached the door to Department 17 of the Kern County Courthouse to request a transcript. (*Id*., ¶ 34.) Finally, the Complaint alleges that Judge Barmann and Presiding Judge Bradshaw failed to respond appropriately to the conduct of the unnamed Deputy Sheriff. (*Id*., ¶¶ 23, 35.)

Plaintiff brings four claims against Judge Barmann, Presiding Judge Bradshaw, and the Superior Court ("State Court Defendants") for: (1) injunctive relief; (2) negligence; (3) 42 U.S.C. § 1983 race and gender discrimination; and (4) declaratory relief. (*See generally* Doc. 1.) The State Court Defendants have moved to dismiss all the claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 8.) Plaintiff opposes dismissal on some, but not all, of the grounds raised by the State Court Defendants. (Doc. 13.) For the reasons set forth below, the motion is **GRANTED** and the claims against the State Court Defendants are **DISMISSED WITHOUT LEAVE TO AMEND**. In addition, Plaintiff is ordered to show cause why the remaining Defendant, the unnamed Deputy Sheriff, should not be dismissed due to her failure to take steps to identify and serve and/or prosecute her claims against that Deputy.

## II.   STANDARD OF DECISION

### A.   Rule 12(b)(1)

The motion to dismiss advances Eleventh Amendment immunity arguments, which are properly raised under Federal Rule of Civil Procedure 12(b)(1). *See Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015); *see also Nevada Irrigation Dist. v. Sobeck*, No. 2:21-CV-00851-DJC-CKD, 2023 WL 8452121, at *2 (E.D. Cal. Dec. 6, 2023). Likewise, the motion's *Rooker-Feldman* arguments should be evaluated under Rule 12(b)(1). *See Morales-Alfonso v. Francisco Enters., Inc*., No. CV-15-0200-TUC-JAS (LAB), 2015 WL 8004876, at *1 (D. Ariz. Dec. 7, 2015*), report and recommendation* adopted, 2016 WL 1459577 (D. Ariz. Apr. 14, 2016).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge a

2

claim for relief for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). A facial attack, for example, "accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (internal quotation marks and citation omitted). Like a motion to dismiss under Rule 12(b)(6), a Rule 12(b)(1) facial attack requires the Court to presume the truth of the plaintiff's factual allegations "and draw all reasonable inferences in his favor." *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). "By contrast, a factual attack contests the *truth* of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) (internal quotation marks and citations omitted) (emphasis in original).

**B.     Rule 12(b)(6)**

The motion also raises judicial immunity, along with other merits challenges. Judicial immunity is properly considered under Rule 12(b)(6) as a motion to dismiss for failure to state a claim. *See Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1388 (9th Cir. 1987); *see also LaTulippe v. Harder*, 574 F. Supp. 3d 870, 880 n.3 (D. Or. 2021) (citing 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed.)).

Under Rule 12(b)(6), a district court must dismiss if a claim fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plaintiffs must "nudge[] their claims across the line from conceivable to plausible" or "their complaint must be dismissed." *Twombly,* 550 U.S. at 570.

///

///

**III. DISCUSSION**

**C. Eleventh Amendment Immunity**

The Eleventh Amendment grants sovereign immunity to states against suits filed in federal court, and bars suits seeking relief against a state, an arm of the state, its instrumentalities, or its agencies. *Durning v. Citibank, NA.*, 950 F.2d 1419, 1422–23 (9th Cir. 1991); *Regents of the Univ. of Cal., et al. v. John Doe, et al.*, 519 U.S. 425, 429 (1997). It is "well established that agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003). This immunity is broad and unequivocal, unless expressly waived by the state agency or a contrary intent is expressed by Congress. *See Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 250 (9th Cir. 1992); *Yakama Indian Nation v. Wash. Dep't of Revenue*, 176 F.3d 1241, 1245 (9th Cir. 1999); *Pennhurst v. Halderman*, 465 U.S. 89, 99–00 (1984).

A suit against the California Supreme Court, any of the California Courts of Appeal, or any California Superior Court is a suit against the State and is barred by the Eleventh Amendment and sovereign immunity. Cal. Const., art. VI, §§ 1, 4; *Greater Los Angeles Council on Deafness v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987) (superseded by statute on other grounds); *Simmons v. Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003); *Los Angeles Cnty. Ass'n of Env't Health Specialists v. Lewin*, 215 F. Supp. 2d 1071, 1078 (C.D. Cal. 2002).

Here, the Complaint names as the Kern County Superior Court as a Defendant. The record contains no suggestion that the Court (or any other Defendant) has waived Eleventh Amendment immunity and no other exception to that immunity appears to apply here. Thus, the Eleventh Amendment bars Plaintiff's claims against the Superior Court and those claims are **DISMISSED WITHOUT LEAVE TO AMEND**.

To the extent the Complaint can also be interpreted as raising official capacity[1] claims that seek damages[2] against Judge Barmann and/or Presiding Judge Bradshaw, such claims are also

---

[1] "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal citations and quotations omitted).

[2] "[C]courts have recognized an exception to the Eleventh Amendment bar for suits for prospective declaratory and

4

barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[Eleventh Amendment immunity] bar remains in effect when State officials are sued for damages in their official capacity."). Any such claims are also **DISMISSED WITHOUT LEAVE TO AMEND**.[3]

### D. *Rooker-Feldman* Doctrine

The State Court Defendants also argue that the claims against Judge Barmann and Presiding Judge Bradshaw are barred by the *Rooker-Feldman* doctrine (Doc. 8-1), which prohibits federal district courts from hearing cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). To determine if *Rooker-Feldman* bars a case, a court must first determine if the federal action contains a forbidden de facto appeal of a state court judicial decision. *Noel v. Hall*, 341 F.3d 1148, 1156 (9th Cir. 2003). If it does not, "the *Rooker-Feldman* inquiry ends." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). If a court determines that the action contains a "forbidden de facto appeal," however, the court cannot hear the de facto appeal portion of the case and, [a]s part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel*, 341 F.3d at 1158; *see also Bell*, 709 F.3d at 897 ("The 'inextricably intertwined' language from *Feldman* is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step in the *Rooker-Feldman* analysis.").

A complaint is a "de facto appeal" of a state court decision where the plaintiff "complains

---

injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law." *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000). The Complaint here does purport to advance claims for declaratory and injunctive relief. (Doc. 1, ¶¶ 50–51.) However, as set forth below, any such claims against Judges Barmann and Presiding Judge Bradshaw are barred by *Rooker-Feldman* and judicial immunity.

[3] Additionally, the State Court Defendants are correct that the Superior Court, as an arm of the State, is not a "person" amenable to suit under Section 1983. *See Will v. Mich. Dep't of state Police*, 491 U.S. 58, 70–71 (1989); *see also Brink v. Herron*, No. CV 20-01097-PHX-SPL (DMF), 2020 WL 5240245, at *4 (D. Ariz. Aug. 7, 2020) (A "state court is not a 'person' for purposes of 42 U.S.C. § 1983 and hence is not subject to lawsuit under that statute."). For the same reason, for purposes of liability under Section 1983, Judges Barmann and Presiding Judge Bradshaw are not "persons" when acting in their official capacities. *Paeste v. Gov't of Guam*, 798 F.3d 1228, 1236 (9th Cir. 2015) ("[S]tate officers, when sued for damages in their official capacities, are, like states, not 'persons' within the meaning of § 1983, because a judgment against a state official in his or her official capacity runs against the state and its treasury.") (internal citations and quotations omitted).

of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel*, 341 F.3d at 1163. Here, the Complaint complains of legal wrongs allegedly committed by the state court. It challenges Judge Barmann's rulings and Presiding Judge Bradshaw's alleged failure to act in response to the conduct of the unnamed Deputy Sheriff. The Complaint seeks injunctive and declaratory relief, in addition to $20.5 million in damages from each defendant. (Doc. 1 at 19.) The Complaint does not specifically identify the form(s) of declaratory or injunctive relief Plaintiff is requesting but the inclusion of those forms of relief in the Prayer suggests that Plaintiff seeks intervention into the state court process. As Defendants point out in reply (Doc. 14 at 2), Plaintiff has argued that this "litigation is akin to a mandamus proceeding, and/or disqualification proceeding." (Doc. 13 at 4.) Accordingly, to the extent Plaintiff seeks a remedy that would reverse or invalidate any aspect of a state court decision, such as by finding that the assigned judge should have been disqualified, the claims constitute a de facto appeal that cannot be entertained by this Court.

"Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined," and the district court lacks jurisdiction. *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001). Put another way, where a claim can succeed "only to the extent that the state court wrongly decided the issues before it," *Rooker-Feldman* bars relief. *Cooper v. Ramos*, 704 F.3d 772, 782 (9th Cir. 2012) (internal citation and quotation omitted). Thus, any aspect of Plaintiff's claims that would require this Court to find that a decision or order of the state court was incorrect are barred by *Rooker-Feldman*. Certain of Plaintiffs claims fall within the "inextricably intertwined" category, including any claims premised upon Judge Barmann's rulings, orders, or related acts, such as his "den[ial of] multiple requests to have [Plaintiff] appear to prosecute [her clients'] matters" (Doc. 1, ¶ 22), and the manner by which he served an Order of Contempt on Plaintiff (*id.*, ¶ 42).. *Rooker-Feldman* does not permit such claims to proceed.

**E.  Absolute Judicial Immunity**

If claims against Judge Barmann or Presiding Judge Bradshaw remain viable after

6

application of Eleventh Amendment immunity and *Rooker-Feldman*,[4] those claims are barred by judicial immunity. The United States Supreme Court has long held that "a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (*per curiam*); *see also Meek v. Cty. of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999) ("It is well settled that judges are generally immune from civil liability under section 1983."). "Although unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles*, 502 U.S. at 11 (internal quotation and citation omitted). Because "judicial immunity is an immunity from suit, not just from ultimate assessment of damages, . . . judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id*. Instead, judicial immunity is overcome in only two situations. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12.

Plaintiff does not direct the Court's attention to any specific information in the record suggesting how Presiding Judge Bradshaw's conduct (or alleged inaction) was either "nonjudicial" in nature or was "taken in the absence of all jurisdiction." To the contrary, as mentioned, she expressly complains of Presiding Judge Bradshaw's "utter failure . . . to act within his role as a presiding judicial officer of the County of Kern, Superior Court" to ensure the safety of "women of color . . . within the premises of the Court." (*See* Doc. 13 at 11.) Plaintiff does elsewhere generally argue that both Judges engaged in "ministerial" acts. (*See* Doc. 13 at 24.) However, the only act (or inaction) the Complaint associates with Presiding Judge Bradshaw is his alleged failure to respond to the conduct of the unnamed Deputy Sheriff, which the Complaint describes as a security issue. (*See, e.g.*, Doc. 1, ¶¶ 23, 30, 34.) The Ninth Circuit has held that

---

[4] Because the Complaint is sometimes difficult to follow, the Court moves past *Rooker-Feldman* in an abundance of caution, even though all the claims against the State Court Defendants arguably fall within *Rooker-Feldman*'s coverage.

providing security for a Court is an "adjudicative" rather than "ministerial" role. *Lee v. Cal. Highway Patrol*, 185 F.3d 867 (9th Cir. 1999) ("[S]ince [worker's compensation appeals board judges] were acting in their adjudicative, rather than ministerial capacities in ensuring the security of their courts, we agree with the district court's conclusion that these defendants are absolutely immune from a damage action."). If *securing* a courtroom is a judicial act, then it follows that *failing* to secure a courtroom in the manner Plaintiff believes would have been appropriate is likewise judicial in nature and entitled to immunity. Thus, Presiding Judge Bradshaw is entitled to judicial immunity for the conduct (or inaction) alleged in the Complaint.

As for Judge Barmann, Plaintiff suggests that he acted in the absence of all jurisdiction for two reasons. First, the Complaint references a contempt proceeding Judge Barmann apparently held in relation to Ms. Kamath's conduct. (Doc. 1, ¶¶ 37, 38.) Ms. Kamath argues that Judge Barmann acted without jurisdiction over that proceeding because he did not personally serve her with the contempt order. (*Id.*; Doc. 13 at 4.) This is not what the "absence of all jurisdiction" exception contemplates; rather, "[w]here not clearly lacking subject matter jurisdiction, a judge is entitled to immunity even if there was no personal jurisdiction over the complaining party." *See Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir. 1986).[5]

Second, Ms. Kamath appears to suggest that Judge Barmann acted in the absence of all jurisdiction because "a determination of the issue of [the] disqualification" of Judge Barmann is pending. (Doc. 13 at 5.) It is unclear what disqualification proceeding Plaintiff is referencing, as Ms. Kamath does not indicate that Judge Barmann was disqualified at the time of the acts described in the Complaint nor that he has subsequently been disqualified. Her opposition brief seems to suggest *this* proceeding is a "disqualification proceeding." (*Id.* at 4.) This assertion runs headlong into the *Rooker-Feldman* doctrine again. As another district court explained:

> To the extent Plaintiff alleges that the state judges acted without jurisdiction because they should have been disqualified, this argument challenges the state court judges' apparent decisions not to recuse or disqualify themselves from the underlying state court matters. As discussed previously [in a section addressing the *Rooker*

---

[5] Plaintiff cites *Rankin v. Howard*, 633 F.2d 844, 848–49 (9th Cir. 1980), for the proposition that "a judge who acts in the clear and complete absence of personal jurisdiction loses his immunity," but the Ninth Circuit explicitly overruled *Rankin* in *Ashelman*. 793 F.2d 1072.

> *Feldman* doctrine], this Court cannot review such final state court decisions, including the judicial determination to recuse or disqualify.

*Mizukami v. Edwards*, No. CIV. 12-00103 LEK, 2012 WL 967976, at *4 (D. Haw. Mar. 21, 2012). Thus, any aspect of Plaintiff's claims premised upon this disqualification theory are barred by *Rooker Feldman*. The Court therefore declines to discuss in detail the various reasons why Ms. Kamath believes Judge Barmann should have been disqualified. (*See* Doc. 13 at 6–9, 14–15.)

Ms. Kamath also suggests Judge Barmann engaged in "nonjudicial" conduct in two ways. First, her opposition describes a "nonjudicial agreement" of some kind. (Doc. 13 at 6–7.) The nature of the agreement described in the opposition is difficult to understand but appears to have something to do with Judge Barmann's relationship to various parties given his past professional activities, including an appearance before the undersigned.[6] If this information is meant to bolster Plaintiff's arguments regarding disqualification, it cannot be considered for the reasons set forth above. Apart from the issue of disqualification, the asserted "nonjudicial agreement" has little bearing on the conduct described in the Complaint, which concerns Judge Barmann's demeanor and actions while on the bench and/or in relation to the state lawsuit in which Ms. Kamath appeared before him.

Plaintiff's claims regarding Judge Barmann's conduct on the bench fare no better. The Complaint alleges that Judge Barmann:

- Failed to personally serve Ms. Kamath with the order of contempt. (Doc. 1, ¶ 38.)
- Continued the contempt hearing numerous times while only providing Ms. Kamath notice via electronic mail. (*Id*., ¶ 42.)
- Made "off-the-record" comments "re caste, minorities, one billion Indian people in the world, and related statements with his alleged doctor, who Defendant BCB claims is also of Indian ethnic and racial background." (*Id*., ¶ 43.)
- "Made off-the-record comments re whether Plaintiff Reshma is disabled, and

---

[6] The opposition brief indicates that the undersigned adjudicated at least one case in which Judge Barmann appeared as an attorney prior to his appointment to the Superior Court bench. (*See* Doc. 13 at 15–16.) The Court does not read the opposition as suggesting the undersigned should recuse herself, as the record contains no information suggesting recusal would be necessary or appropriate.

whether she needs therapy" and commented about Plaintiff that she was allegedly "'on her period,' (not true,) that she is 'a kid,' (not true,) and, 'a young attorney,' (uncalled for in the context of the alleged infractions by the Defendants), where such ad hominem remarks, inter alia, were unnecessary and discriminatory." (*Id.*, ¶ 45.)

- "[B]rought his familial relations, such as his wife, his children, his 'step' daughters, his doctor, and etcetera – that had no bearing in this case, and were not about substantive merits. Defendant BCB was looking for a 'husband' to show up for Plaintiff Reshma – after Defendant BCB issued a sua sponte order related to bad-faith, false and reckless disregard – often conclusory minute orders – not grounded in fact, and stemming purely from racial and gender discriminatory attitude of Defendant BCB toward Plaintiff Reshma Kamath." (*Id.*, ¶ 46.)

Plaintiff expanded upon these allegations in her opposition, asserting that Judge Barmann's conduct also included:

> [S]lamming and banging his Chamber's door several times; quivering and looking very angry while on the bench; not listening when Plaintiff speak on substantive matters; picking on the only Punjabi-person in the room wearing a turban when a day's matter ended; not questioning whether a white person, Jack Wright's spouse (also white) who was in the room whether she was witness; was constantly harassing and demeaning Plaintiff in this matter; without basis citing Plaintiff in this matter for contempt, unlawful and disorderly conduct in extension of his racism and misogyny towards women of color. He particularly has a bias toward women of color who're tanned and darker-skinned. This is skin-tone bias, as well as facial feature bias.

(Doc. 13 at 10–11.) Though some of these factual assertions were not included in the Complaint, the Court will assume the Complaint could be amended to include them, so has considered them in framing its analysis. Even doing so, the Court finds the alleged conduct is judicial in nature and therefore is protected by judicial immunity. Courts have applied judicial immunity in similar situations. For example, in *Ricketts v. Kwan*, No. CV 19-4088-ODW (PLA), 2019 WL 4180009, at *6 (C.D. Cal. June 6, 2019), the plaintiff alleged, among other things, that a judge "unfairly controlled the underlying case" based on several factors,

> such as plaintiff's race, perceived level of education, and social economic background; acted rudely, laughed at plaintiff, and walked off the bench during oral arguments; [and] violated state ethical rules.

*Id*. Because the alleged actions "however erroneous or malicious" were taken by the judge acting in their judicial capacity, judicial immunity applied. *Id*. Another district court applied immunity where a judicial officer allegedly made racist comments about the plaintiff's physical features and nationality during his immigration proceedings. *Partovi v. Beamer*, No. CIV. 10-00689 SOM, 2011 WL 6300925, at *2 (D. Haw. Dec. 16, 2011) ("[Immigration Judge] Beamer was acting in a judicial capacity when she allegedly made racist remarks about Partovi."). As in *Ricketts* and *Partovi*, the comments and actions Plaintiff complains of appear to have been made and/or took place in the context of a judicial proceeding. *See Meek*, 183 F.3d at 965 ("A judge is not deprived of immunity because he takes actions which are in error, are done maliciously, or are in excess of his authority.").[7]

      Finally, the Complaint's prayers for declaratory and injunctive relief do not pierce judicial immunity. Section 1983 expressly immunizes judicial officers from injunctive relief for actions taken in their judicial capacity "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see also Weldon v. Kapetan*, No. 1:17-CV-01536-LJO-SKO, 2018 WL 2127060, at *4 (E.D. Cal. May 9, 2018), *reconsideration denied*, 2018 WL 2318040 (E.D. Cal. May 22, 2018). "The phrase 'declaratory relief' in the current version of [Section] 1983 refers to the ability of a litigant to appeal[ ] the judge's order.'" *Id*. (citations omitted); *see also Payne v. Marsteiner*, No. CV 20-10066-JWH (KK), 2021 WL 765713, at *3 (C.D. Cal. Feb. 23, 2021), *report and recommendation adopted*, No. CV 20-10066-JWH (KK), 2021 WL 765714 (C.D. Cal. Feb. 25, 2021) (finding that the exception to judicial immunity set forth in Section 1983 did not apply where the plaintiff did not allege any facts demonstrating the judicial defendant violated a declaratory decree or that declaratory relief was unavailable considering that the plaintiff had the opportunity to appeal the challenged judicial actions). Plaintiff does not

---

[7] Under *Meeks*, the general rule is that judicial immunity applies even to malicious conduct so long as the conduct was judicial in nature. Plaintiff seems to suggest that there is an exception to this general rule for conduct that demonstrates "objective racial bias." (Doc. 13 at 17–20.) However, she cites no authority for such an exception and the Court has been unable to identify any.

1  allege facts suggesting that either Judge violated any "declaratory decree,"[8] nor does she allege or
2  demonstrate that "declaratory relief was unavailable" in the state court actions. Thus, Plaintiff
3  may not proceed on declaratory or injunctive relief claims against the judges because such actions
4  are expressly excluded by the language of § 1983.

5  Because the claims against the State Court Defendants do not appear to be curable by way
6  of amendment, leave to amend will not be given. Also, the Court declines to address the other
7  merits-based challenges to Plaintiff's Section 1983 claim.

**F.      Negligence Claim**

The Complaint also asserts a negligence claim against all the Defendants. (Doc. 1 at
¶¶ 66–73.) State Court Defendants argue that this claim is subject to dismissal because: (1) the
Complaint fails to allege compliance with the California Government Claims Act, Cal. Cov. Code
§ 810, et seq.; and (2) Plaintiff fails to sufficiently allege that any Defendant owed her a relevant
duty. (Doc. 8-1 at 14–16.) Plaintiff failed to respond to either argument. (*See generally* Doc. 13.)
The Court finds that the negligence claim is subject to dismissal for the reasons set forth in the
State Court Defendants' papers. Plaintiff does not request leave to amend this claim, so leave will
not be provided.

**G.      Claims Against Deputy Sheriff Bailiff**

The record reflects that the unnamed Deputy Sheriff defendant has not entered an
appearance in this case. (*See* Docket; *see also* Doc. 13 at 18 (plaintiff conceding as much).) There
is no evidence on the docket that the unnamed Deputy has been served. Federal Rule of Civil
Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is
filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action
without prejudice against that defendant or order that service be made within a specified time. But
if the plaintiff shows good cause for the failure, the court must extend the time for service for an
appropriate period." *See also Flores v. Los Angeles Cnty. Sheriff's Dep't*, No. 2:21-CV-00117-
VAP-EX, 2022 WL 18277272, at *8 (C.D. Cal. Nov. 2, 2022) (indicating a court may dismiss a

---

[8] The Complaint does contain the conclusory allegation that Judge Barmann "violated a declaratory decree, and/or this is a situation, where declaratory relief is unavailable," (Doc. 1 at ¶ 58), but fails to include any facts suggesting as much.

12

doe defendant who is not timely identified and served). Alternatively, if the unnamed Deputy has been served and has not appeared, then it is unclear why Plaintiff has not requested entry of default against the Deputy. Thus, the Court will require Plaintiff to show cause in writing why the claims against the Unnamed Deputy Sheriff should not be dismissed.

## CONCLUSION

For the reasons set forth above:

(1) The State Court Defendants' motion to dismiss (Doc. 8) is **GRANTED**.

(2) All claims against the Kern County Superior Court, Judge Barmann, and Presiding Judge Bradshaw are **DISMISSED WITHOUT LEAVE TO AMEND**.

(3) The Clerk of Court is directed to **TERMINATE** Kern County Superior Court, Judge Barmann, and Presiding Judge Bradshaw as Defendants.

(4) Within 21 days of the date of this order, Plaintiff is ordered to show cause why the unnamed Deputy Sheriff should not be dismissed from this case without prejudice because of either her failure to serve him or her failure to prosecute this matter. If Plaintiff fails to timely respond to this order to show cause, the Deputy Sheriff will be dismissed and this case closed without further notice.

IT IS SO ORDERED.

Dated:  **May 13, 2024**

*Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE

13